IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| LANTIE WALDEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CASE NO.: |
| v. | ) |
| | ) |
| RAUSCH & PAUSCH L.P., | ) |
| | ) **JURY DEMANDED** |
| Defendant. | ) |

## COMPLAINT

**COMES NOW** the Plaintiff, Ms. Lantie Walden ("Walden" or "Plaintiff"), by and through her undersigned counsel, and files this Complaint against the Defendant, Rausch & Pausch L.P. (the "Company" or "Defendant"). As grounds for this Complaint, Plaintiff states the following:

### JURISDICTION & VENUE

1. This is a suit authorized and brought to secure the protection of and to redress the deprivation of rights secured by Title VII of the Act of Congress known as the "Civil Rights Act of 1964," codified at 42 U.S.C. § 2000e *et seq.*, as amended by the "Civil Rights Act of 1991," ("Title VII").

2. Jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331 and 1343.

3. The unlawful employment practices alleged in this Complaint were committed in Lee County, in the Middle District of Alabama; therefore, venue lies within the Middle District of Alabama, pursuant to 28 U.S.C. § 1391.

## ADMINISTRATIVE EXHAUSTION

4. Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") on or about October 15, 2020. (See Exhibit "A"). Charge No. 420-2021-00136 (the "Charge") alleged that Defendant subjected Plaintiff to disparate terms and conditions of her employment, based on her race, in violation of Title VII, and to retaliation for opposing activity made illegal by the same.

5. The EEOC issued a Dismissal and Notice of Rights (the "RTS Notice") for the Charge on May 5, 2022.

6. Plaintiff received the RTS Notice for the Charge on May 5, 2022. (See Exhibit "B").

7. Plaintiff has now filed this Complaint within ninety (90) days of her receipt of the RTS Notice.

8. Plaintiff has thus exhausted all administrative remedies available prior to filing this Complaint.

## PARTIES

9. Plaintiff is a citizen of the United States of America, who currently resides in Chambers County, Alabama.

10. Plaintiff is over the age of nineteen (19) years.

11. Defendant is an employer in the State of Alabama within the meaning of 42 U.S.C. § 2000e(b), in that it engages in an industry affecting commerce and employed fifteen (15) or more employees for the requisite duration under Title VII.

12. Defendant conducts substantial business at its Lee County, Alabama location, with the address 2450 Paul Parks Lane, Auburn, Alabama 36832.

13. Defendant was Plaintiff's employer during all times relevant to this Complaint.

## FACTUAL ALLEGATIONS

14. Plaintiff is a white female.

15. Plaintiff was hired in March of 2015 as a Tool Crib Coordinator.

16. While employed, Plaintiff routinely received performance reviews reflecting that her job performance met or exceeded expectations.

17. During Plaintiff's employment, Mr. Kelly Nelson ("Nelson") was Defendant's Chief Executive Officer.

18. Nelson repeatedly expressed to employees that political messages and other potentially divisive topics should be left outside the workplace.

19. Defendant had a dress code policy which prohibited certain attire at the workplace.

20. Mr. Tim Beasley ("Beasley") was employed by Defendant as its Human Resources Manager.

21. In or around June 2020, Plaintiff spoke with Beasley about Defendant's dress code policy.

22. Specifically, Plaintiff asked if "Black Lives Matter" shirts were in violation of policy.

23. Plaintiff asked because several individuals, including Mr. Brantley ("Frazier"), were wearing politically motivated t-shirts, which she believed to be in violation of policy.

24. Beasley informed Plaintiff that wearing shirts with political messages was impermissible pursuant to Defendant's policy and that all the individuals who were wearing politically motivated attire were informed of the violation.

25. On August 27, 2020, Plaintiff was entering Defendant's facility and walked past Frazier.

26. Frazier is a black male.

27. Frazier was wearing a t-shirt that included words and/or images associated with the "Black Lives Matter" movement.

28. Given Plaintiff's previous conversation with Beasley, she decided to alert Frazier about the shirt being in violation of Defendant's policy to help him avoid being disciplined for wearing it.

29. Plaintiff asked Frazier: "Did anyone say anything about your shirt?"

30. Frazier responded: "What's wrong with my shirt?"

31. Plaintiff informed Frazier that nothing was wrong with it, but it's a violation of Defendant's policy to wear it.

32. Frazier told Plaintiff that if the Company has a problem with his shirt, then he may not need to work there.

33. Plaintiff told him that it was not like that, she just did not want Frazier to get in trouble.

34. Plaintiff then went into her office.

35. Approximately twenty (20) minutes later, Frazier burst into Plaintiff's office, along with his manager, Mr. Mike Brown ("Brown").

36. Frazier was physically shaking and visibly angry.

37. Frazier demanded that Plaintiff explain to Brown what she said to Frazier about his shirt.

38. Plaintiff was shocked and tried to explain that she did not have any issue with the shirt, but just wanted him to know that wearing it was a violation of Defendant's policy.

39. Frazier stood inches away from Plaintiff, pointing his finger in a threatening manner and yelled that Plaintiff was a "racist" and that she was "what's wrong with the world".

40. A co-worker, Ms. Jenny Williams ("Williams") was in Plaintiff's office at the time and told Brown that he needed to get Frazier out of the office.

41. Frazier refused to leave peacefully and ultimately had to be forcefully removed by Brown.

42. As Frazier was being pulled out of Plaintiff's office, Frazier continued to call Plaintiff a "racist" and even threated her by stating, "I have something for you!"

43. Immediately thereafter, Plaintiff spoke to Beasley and her purchasing manager, Ms. Carmen Jordan ("Jordan") about what had transpired.

44. In addition to the other events, Plaintiff specifically informed them that she was called a "racist."

45. After Plaintiff met with Jordan, she provided her with a written statement.

46. Jordan informed Plaintiff that an investigation would be conducted and until completed, Plaintiff would need to work remotely.

47. About an hour and half later, Plaintiff was instructed to go home immediately.

48. The next day, Plaintiff received a call from Nelson, Beasley and Jordan.

49. Nelson informed Plaintiff that she had caused a violent altercation in the office and that she would be suspended without pay for one (1) week.

50. When Plaintiff asked how that could be, Nelson retorted: "Let's cut the shit; I'm not having this racist shit in the plant."

51. On September 3, 2020, before the expiration of Plaintiff's suspension, she was called and informed that the Defendant had decided to terminate her employment effective immediately, due to poor performance.

52. Defendant's unlawful termination of Plaintiff's employment has significantly damaged her.

## COUNT ONE
## RETALIATION IN VIOLATION OF TITLE VII

53. Plaintiff exercised a protected right under Title VII when she opposed race discrimination by reporting Frazier's conduct on August 27, 2020.

54. Plaintiff reported Frazier's behavior to Beasley and Jordan.

55. In addition to the other statements and events, Plaintiff reported that Frazier called her a "racist", told her she was "what's wrong with the world" and even threatened her.

56. Plaintiff subjectively believed that Frazier's behavior was motivated by her race.

7

57. A reasonable person would have believed Frazier's behavior towards Plaintiff constituted race discrimination.

58. Less than two (2) hours after Plaintiff reported Frazier's discriminatory behavior, Defendant instructed Plaintiff to go home.

59. The next day, Defendant informed Plaintiff that she was suspended for one (1) week without pay due to her violation of Defendant's policy against violence.

60. Before Plaintiff returned to work, on September 3, 2020, she was called and informed that her employment had been terminated due to "poor performance."

61. Defendant cited vague "performance" issues as the reason for her termination.

62. However, prior to her termination, Plaintiff had not received any verbal or written warnings regarding alleged performance issues.

63. Defendant terminated Plaintiff's employment seven (7) days after Plaintiff opposed conduct made unlawful by Title VII.

64. Defendant terminated Plaintiff's employment because she reported race discrimination.

65. Plaintiff has suffered extensive damage as a proximate result of discrimination and retaliation, which were caused by Defendant's deliberate indifference to Plaintiff's federally protected rights.

66. As a result of Defendant's conduct, Plaintiff was deprived of income and the benefits associated with employment. The conduct described above also caused Plaintiff emotional distress, mental anguish, loss of enjoyment of life, inconvenience, and humiliation.

## COUNT TWO
## RACE DISCRIMINATION IN VIOLATION OF TITLE VII

67. Plaintiff is a Caucasian female.

68. Plaintiff was, and remains, qualified to perform the duties of Tool Crib Coordinator.

69. Prior to Plaintiff's termination, she had not received any verbal or written warnings regarding her performance.

70. Frazier, a black male, instigated a confrontation in Plaintiff's office.

71. Frazier screamed at Plaintiff, called her a racist and even threatened her.

72. Despite Frazier's aggressive and unacceptable behavior, he was only issued a written warning.

73. Seven (7) days after reporting race discrimination to Beasley and Jordan, Defendant terminated her employment.

74. Defendant allegedly terminated Plaintiff for "performance" issues.

75. If Defendant truly took issue with Plaintiff's "performance", it never afforded her the opportunity to correct the perceived problems.

76. As such, Plaintiff's race was, at minimum, a motivating factor in Defendant's decision to terminate Plaintiff's employment.

77. As a result of Defendant's conduct, Plaintiff was deprived of income and the benefits associated with employment. The conduct described above also caused Plaintiff emotional distress, mental anguish, loss of enjoyment of life, inconvenience, and humiliation.

**WHEREFORE**, Plaintiff respectfully requests this Court grant to Plaintiff the following:

- A. Damages for mental and emotional distress in an amount determined by a jury;
- B. Back pay for lost income and any other compensatory damages;
- C. Reinstatement, or Front pay if the Court finds reinstatement to be impracticable;
- D. Punitive damages in an amount to be determined by a jury;
- E. A reasonable attorneys' fee;
- F. Plaintiff's costs and expenses;
- G. Interest on all monies owed; and
- H. Any other relief the Court deems just and appropriate.

Respectfully submitted,

*[signature]*

Anthony D. Michel (ASB-6809-O64M)
*Attorney for Plaintiff, Lantie Walden*

**PLAINTIFF DEMANDS TRIAL BY STRUCK JURY.**

Respectfully submitted,

*[signature]*

Anthony D. Michel
*Attorney for Plaintiff*

**MICHEL | KING**
505 20th Street North, Suite 1650
Birmingham, Alabama 35203
Anthony@wmalabamalaw.com
Tel:  (205) 980-5704
Fax:  (205) 994-2819

**DEFENDANT TO BE SERVED BY PROCESS SERVER AT THE FOLLOWING ADDRESS:**

Rausch & Pausch L.P.
r/a Carmen Jordan
2450 Paul Parks Lane
Auburn, AL 36832